[No. 4297.  Decided December 2, 1902.]

FIDELITY INSURANCE, TRUST AND SAFE DEPOSIT COMPANY, *Respondent*, v. OLE B. NELSON *et ux.*, *Appellants*.

CORPORATIONS — CREATION BY SPECIAL ACT — LAWS OF SISTER STATE — PRESUMPTION AS TO VALIDITY.

Where the laws of a sister state duly authenticated are placed in evidence showing an act specially incorporating plaintiff as a corporation, no presumption can be indulged that the law is invalid because such an act would be unconstitutional in this state (*Gunderson v. Gunderson*, 25 Wash. 459, distinguished).

TRUSTEES — DISCHARGE — APPOINTMENT OF SUCCESSOR.

Where a trustee was appointed in the place and stead of other trustees of an estate, upon the petition of the latter to be discharged, and such substituted trustee accepted the trust and entered upon its active management as sole trustee and continued to so act for more than twenty years, a debtor to the trust estate cannot urge, in an action by such trustee to enforce collection of a debt, that it was merely a co-trustee because of failure of the court appointing it to enter an order discharging the old trustees.

FOREIGN TRUSTEES — RIGHT TO SUE IN THIS STATE.

A trustee charged with the administration of an estate, though appointed by the court of a sister state, may maintain an action in the courts of this state respecting the trust property, when no local creditor is affected.

ASSIGNMENT IN BLANK — AUTHORIZED COMPLETION — EFFECT.

The fact that an assignment of a mortgage was made in blank to an unnamed assignee would not affect the right of such assignee to maintain action thereon, where the assignee's name was afterwards inserted in the blank with the express assent of the assignor.

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge. Affirmed.

*Adolph Munter,* for appellants.

*Fitch & Harris* and *A. G. Avery,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an action brought to recover upon a promissory note, and to foreclose a mortgage given to secure the same. The note and mortgage in suit were executed and delivered by the appellants to the Solicitor's Loan & Trust Company, a corporation, which, in turn, for a valuable consideration, assigned the same to the respondent. The defenses set up are almost wholly technical. It is not disputed that a large sum (all that the respondent claims, in fact) is justly due and owing upon the note and mortgage, but it is claimed that the respondent did not sufficiently prove its legal capacity to maintain the action. While some thirty-one assignments of error have been made, they can all be grouped under a few general heads; and it is in this manner we shall proceed to consider them, without making reference to the specific assignments.

1. The respondent was incorporated by a special act, and certain acts supplemental thereto, of the legislature of the state of Pennsylvania. It sought to prove its due incorporation by producing a copy of these acts, duly authenticated under the great seal of that state. It is contended that this was insufficient, because it was not

shown that the legislature of that state had constitutional power to pass a special act of incorporation. The argument is that, because our own constitution prohibits our legislature from creating corporations by special acts, we must presume, in the absence of a showing to the contrary, that the constitution of Pennsylvania is the same, and hence the act relied upon is unconstitutional. *Gunderson v. Gunderson,* 25 Wash. 459 (65 Pac. 791), is cited as maintaining this principle. We did say in that case that, in the absence of a showing to the contrary, we would presume that the laws of a sister state were the same as our own, but that is not the present case. Here there is proof of a law of the sister state, and, if we were to indulge in presumptions at all, we would presume that it was passed with all due formalities, is within the constitutional powers of the legislative body which passed it, and is a valid and existing law, rather than presume that, because our constitution prohibits such law, the Pennsylvania constitution must likewise do so. By the constitution of the United States each state must give full faith and credit to the public acts, records, and judicial proceedings of every other state; and it would not be doing so to ignore a statute of a sister state, proven with the due formalities required by our own laws, merely because such an act could not be passed under our own constitution.

2. Among the powers conferred upon the respondent by the act incorporating it is the power to receive, hold, and manage trust estates. From the evidence it appears that one John Gibson died testate in Pennsylvania, leaving a large amount of property, which he devised to three trustees by name, "and their successors," to manage and dispose of according to certain directions contained in his will. One of the trustees named refused to qualify as

such, and the trust was assumed by the remaining two.
Of these, one never took any active part in the manage-
ment of the trust estate, and the burden thereof was
actually carried by one. After several years the trustees
qualifying petitioned the orphan's court of Pennsylvania
county to be relieved of their duties under the trust, re-
citing in their petition the foregoing facts, and the fur-
ther facts that the trustee having the estate actively in
charge was, owing to ill health, no longer able to perform
the duties required of him in the management of the
estate, and that the other did not desire to take upon
himself the active management. They prayed that they
be discharged of the trust, and that the respondent be
appointed in their place and stead. All parties in inter-
est appeared in the orphan's court and consented in
writing that the petition be granted, whereupon the court
ordered and decreed that the respondent "be appointed
trustee under the trusts of said will, in the place and
stead of the said" petitioners, and further ordered that
the petitioners be discharged as such trustees on paying
over, transferring, and assigning to the respondent all
the property in their hands belonging to the estate.
While it appears that the respondent accepted the trust,
and entered upon its active management as sole trustee, it
does not appear that any subsequent order was entered
discharging the old trustees, and from this it is argued
that the respondent is not shown to be the sole trustee,
and cannot maintain this action without joining its co-
trustees. It is evident, however, that the respondent
and the persons originally named as trustees did not be-
come co-trustees under the order of the court. The re-
spondent was appointed in the "place and stead" of the
original trustees, not to act jointly with them; and, if

it is not the sole trustee, it is not a trustee at all. Nor do we think the order can be construed not to be immediately operative. The phrase "discharged as trustees", in the concluding part of the order, evidently means discharged from liability under the trust, rather than from the active performance of it. But more than this, it appears that the respondent entered upon the performance of the duties of the trust immediately after this appointment, and has continued in the performance of those duties, acting at all times as sole trustee, for more than twenty years, without question as to its right by any of the parties interested in the trust estate. This alone is sufficient evidence of right. Certainly no one interested in the trust estate could raise this question at this late day, and a stranger thereto ought not to be permitted to do so in order that he may defeat the collection of a just debt owing by him to the trust estate.

3. Another reason urged for reversal is that the respondent cannot maintain an action as trustee within this state. Strictly speaking, perhaps, a trustee deriving his powers from statute or judicial appointment cannot, as of right, maintain an action in courts outside of the jurisdiction of his appointment, and the tendency of the courts in earlier times was to refuse to entertain such actions. It may be true, also, that this privilege is even now generally denied to executors and administrators. But this court has, in common with many other courts, adopted a different rule with reference to certain classes of trustees, such as receivers, assignees, and like officers, and permit these to maintain actions when to do so does not interfere with the rights of local creditors pursuing their remedies in the local courts. *Whitman v. Mast,* 11 Wash. 318 (39 Pac. 649, 48 Am. St. Rep. 874); *Happy*

*v. Prickett,* 24 Wash. 290 (64 Pac. 528). See, also, for the general rule, *Iowa & California Land Co. v. Hoag,* 132 Cal. 627 (64 Pac. 1073), and cases there collected. The privilege is extended to these officers on the principle of comity and there would seem to be no just reason for making a distinction between them and a trustee having the powers possessed by the one before us. As no local creditor is affected, we think the right of action should not be refused.

4. Some question is made as to the validity of the assignment from the original mortgagee to the respondent, it appearing that the name of the respondent was not inserted in the blank form of assignment used until sometime after the transfer was actually made. As the note and mortgage were actually paid for and delivered, it would seem that in a court of equity a showing of a failure to make a formal indorsement of the papers ought not to be fatal to the right of the purchaser to recover thereon; but, be this as it may, it was shown by the uncontradicted testimony, that the respondent's name was afterwards inserted in the blanks with the express consent of the assignor. If title did not fully pass by the sale and delivery, it did do so by the latter transaction.

The judgment is affirmed.

REAVIS, C. J., and MOUNT, ANDERS and DUNBAR, JJ., concur.